**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02030-CMA-KMT

CLINTON J. DAWSON, and
JANELL DAWSON,

      Plaintiffs,

v.

GOLDMAN SACHS & COMPANY,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

---

This matter is before the Court on Defendant Goldman Sachs & Company's ("Goldman Sachs'") Motion to Dismiss Plaintiffs' Second Amended Complaint. This case arises out of a foreclosure conducted by Litton Loan Servicing, LP ("Litton"), a former subsidiary of Goldman Sachs. Defendant's Motion to Dismiss is granted for two primary reasons, as discussed below.

Three of Plaintiffs' claims – (1) tortious interference with a contract and/or expectancy; (2) intentional infliction of emotional distress ("IIED"); and (3) violation of the Colorado Consumer Protection Act ("CCPA") – are the same claims litigated against Litton Loan Servicing, LLP ("Litton Litigation") and which were dismissed by this court in *Dawson v. Litton Loan Servicing, LP*, No. 12-CV-01334-CMA-KMT, 2014 WL 4821373 (D. Colo. Sept. 29, 2014). Because Plaintiffs' claims against Goldman Sachs with

respect to these three claims are based on a theory of derivative liability for Litton's actions, Plaintiffs' claims fail as a matter of law.

With regard to Plaintiffs' Colorado Organized Crime Control Act ("COCCA") and Racketeer Influenced Corrupt Organizations Act ("RICO") claims, Plaintiffs have both failed to properly allege a racketeering "enterprise" and to meet the heightened pleading standards required by Fed. R. Civ. P 9(b) and Colo. R. Civ. P. 9(b).

## I. BACKGROUND

On January 19, 2007, Plaintiffs borrowed the principal sum of $167,000 (the "Loan") from Residential Acceptance Network, Inc. ("RAN"). In connection with the Loan, Plaintiffs executed a Note, dated January 19, 2007 (the "Note") in favor of RAN and its successors and assigns. A failure to pay the full amount of each monthly payment due constituted a "default" of the Note.

Plaintiffs also executed a Deed of Trust in connection with the Loan, dated January 19, 2007 (the "Deed of Trust"), encumbering real property located at 309 Hill Drive, Grand Junction, Colorado 81503 (the "Property") for the benefit of RAN and its successors and assigns. Plaintiffs' Note and Deed of Trust were subsequently assigned and transferred to LaSalle Bank National Association, as Trustee for the C-Bass Mortgage Loan Asset-Backed Certificates, 4 Series 2007-CB4. In March of 2007, Litton began servicing Plaintiffs' Loan, and Goldman Sachs acquired a controlling shareholder interest in Litton in 2007.

Plaintiffs struggled to pay their loan. They attempted to work out a permanent loan modification with Litton, including being provided with a three-month period of

reduced payments, but were ultimately unable to do so. In January of 2011, Litton notified Plaintiffs that they had defaulted on the loan, and by March of 2011, Plaintiffs stopped making any payments on the loan. Litton subsequently foreclosed on the property which was sold to the Trustee at a public auction foreclosure sale in August of 2011. In September of 2011, the District Court for Mesa County approved the Public Trustee's sale of the Property to the Trustee and the Public Trustee issued its Public Trustee's Confirmation Deed vesting "free and clear" title to the Property in the name of the Trustee. Around the same time that the property was sold in foreclosure, Litton transferred the service of the loan to Ocwen.

As previously noted, Plaintiffs brought suit against Litton and Ocwen in May 2012, via the Litton Litigation, alleging (1) tortious interference with a contract and/or expectancy; (2) IIED"; and (3) violations of the CCPA. *Dawson v. Litton Loan Servicing, LP*, No. 12-CV-01334-CMA-KMT, 2013 WL 1283848 (D. Colo. Mar. 28, 2013). This Court granted Litton's Motion for Summary Judgment and dismissed the Plaintiffs' case in its entirety. *See Dawson*, 2014 WL 4821373.

Plaintiffs brought the instant action against Goldman Sachs in July of 2013. In February of 2014, after a Motion to Dismiss was filed, the Plaintiffs filed a Second Amended Complaint ("SAC"). The SAC contains five common law and statutory claims, including: (1) tortious interference with a contract and/or a prospective business advantage; (2) violations of the Colorado Consumer Protection Act ("CCPA"); (3) Intentional Infliction of Emotional Distress ("IIED"); (4) violations of the Colorado

Organized Crime Control Act; and (5) violations of the Racketeer Influenced Corrupt Organizations Act.

The claims against Goldman Sachs are based on allegations that Goldman Sachs "acquired a controlling interest in Litton in 2007" and that Goldman Sachs' executives – using Goldman's position as the majority shareholder for Litton – helped to create a "massive at-will foreclosure mill" (Doc. # 46 at 24) when they "directed" Litton to implement so-called "denial sweeps," in which applications for home loan modifications were denied "en masse" and without proper consideration (*id.* at 24). Plaintiffs allege that these "denial sweeps" were financially advantageous for Goldman Sachs, because it could more quickly recover the loans it had made to Litton through a foreclosure sale, whereas it faced delay if a loan modification allowed the homeowner to stay in his or her home. (*Id.* at 4-5.)

## II. STANDARD OF REVIEW

### A.   RULE 12(b)(6)

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (*quoting Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain sufficient allegations of fact to state a claim for relief that is not merely conceivable, but is also "plausible on its face." *Id.* at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Plausibility" refers to the "scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma.,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570). More specifically, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

Ultimately, the Court has a duty to determine whether a plaintiff sufficiently alleges facts supporting all the elements necessary to establish entitlement to relief under the legal theory proposed. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). If a plaintiff fails to make sufficient, non-conclusory allegations in support of his or her claims, the complaint must be dismissed. *Twombly,* 550 U.S. at 570.

A court generally considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Ordinarily, a "12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court and all parties are given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(b) (further internal modifications omitted)). Notwithstanding that general rule, however, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). Furthermore, the Court may also consider "matters of which a court may take judicial notice." *Id.* (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Here, Defendant requested that this Court take judicial notice of exhibits it submitted in support of its first Motion to Dismiss; specifically, it provided publicly available documents relating to the Dawsons' foreclosure proceeding. *See* (Doc. ## 33, 34, 53, 54.) The Court granted this Motion, and it considers only those documents (as well as the SAC) in granting Defendant's Motion. *See* (Doc. ## 34, 54.)

### B.   PARTICULARITY IN PLEADING—RULE 9(b)

When a claim includes fraud as an element, *e.g.*, a COCCA or RICO claim, that claim's allegations must be pled with particularity, as required by Fed. R. Civ. P. 9(b) and Colo. R. Civ. P. 9(b). *HealthONE of Denver, Inc. v. UnitedHealth Group Inc.,* 805

6

F.Supp.2d 1115, 1120–21 (D. Colo. 2011) (discussing Fed. R. Civ. P. 9(b)); *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1371 (Colo. App. 1993) (discussing per Colo. R. Civ. P. 9(b)). Rule 9(b) requires a complaint to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted). The particularity requirement is designed to afford a defendant "fair notice of the plaintiff's claims and the factual ground upon which they are based." *Id.* At the same time, a court must bear in mind that Rule 9(b) is read in conjunction with the principles of Rule 8, "which calls for pleadings to be 'simple, concise, and direct, . . . and to be construed as to do substantial justice.'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting Fed. R. Civ. P. 8(e), (f)). Additionally, the sufficiency of the complaint must be judged in its entirety rather than in a piecemeal fashion. *Id.* at 1253.

### III. DISCUSSION

This case is before the Court pursuant to diversity jurisdiction and the parties do not dispute that Colorado's substantive law applies. As such, the Court will apply Colorado substantive law to Plaintiffs' state law claims. *Elec. Distribs., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999).

### A. TORTIOUS INTERFERENCE WITH A CONTRACT AND/OR EXPECTANCY

Plaintiffs allege both tortious interference with a contract and/or expectancy. According to the Restatement (Second) of Torts, intentional interference with the performance of a contract by a third person occurs when one intentionally and

7

improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract. Restatement (Second) of Torts § 766 (1979). To prove tortious interference with a contract, a plaintiff must show that: (1) a contract existed; (2) the defendant had knowledge of the contract; (3) the defendant interfered and induced the other party to breach the contract; and (4) the plaintiff was injured as a result. *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1115 (D. Colo. 2004) (citing *Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1117 (Colo. 1990)).

Plaintiffs also allege tortious interference with prospective business advantage. Tortious interference with prospective business advantage requires essentially the same elements as tortious interference with a contract, except that the former does not require an existing contract, only a "prospective contractual relation." Restatement (Second) of Torts § 766B, cmts. a, d.

Plaintiffs alleged the same tortious interference claims in the Litton Litigation.[1] In the Litton Litigation, this Court held that the Plaintiffs failed to provide any evidence

---

[1] The Litton Litigation allegations:
  1) Plaintiffs had "a reasonable expectancy that the securitized trust would modify or restructure their loan," and Defendant Litton interfered with that expectancy;
  2) Litton misused the Home Affordable Modification Program ("HAMP")[1] "to put Plaintiffs in default rather than helping them avoid default";
  3) Litton obstructed Plaintiffs' "attempts to cure"; and
  4) Litton pretended to administer the Plaintiffs' HAMP application but had no intention of doing so in good faith.

*Dawson*, 2014 WL 4821373 at *16-17.

The SAC allegations in the instant case:
  1) Plaintiffs had "a reasonable opportunity that the securitized trust would modify or restructure their loan,"
  2) Goldman Sachs, in "demanding that Litton represent orally and in writing that it was engaging in loss mitigation when it was denying modifications en-masse whether or not the borrowers

to support their tortious interference with a contract and/or expectancy claim against Litton. In particular, the Order granting Litton's Motion for Summary Judgment concluded that:

> Plaintiffs provide[d] no reason, legal or factual, as to why they would have a 'reasonable expectancy that the securitized trust would modify or restructure their loan,' let alone how Defendant Litton interfered with that expectancy. . . . Plaintiffs also fail to demonstrate how Defendant Litton misused the HAMP program or how Defendant Litton was in any way responsible for Plaintiffs' failure to pay their mortgage. Plaintiffs fail to demonstrate that Defendant Litton did not comply with HAMP's loss mitigation requirements in any way. Plaintiffs also fail . . . to provide any evidence as to how Defendant Litton obstructed Plaintiffs' alleged attempts to cure. On the other hand, Defendant Litton provided evidence that Plaintiffs stopped making all payments on their mortgage as early as March of 2011, prior to the initiation of foreclosure proceedings in April of 2011.

*Dawson*, 2014 WL 4821373 at *17.

The SAC seeks to hold Goldman Sachs derivatively liable for Litton's actions. However, this Court has already held that Plaintiffs failed to state a claim of either tortious interference with contract or of tortious interference with prospective business relations against Litton. Thus, there is no basis for holding Goldman Sachs liable on a derivative basis, and these claims are dismissed.

---

qualified and pursued immediate foreclosure, in turn causing Litton to interfere in one or both of the following respects":
A) misusing "loss mitigation to put Plaintiffs in default rather than helping them avoid default";
B) obstructing Plaintiffs' "attempts to cure"; and
C) pretending to administer the Plaintiff's HAMP application despite having no intention of doing so in good faith.
(Doc. # 46 at 10-11.)

**B.     THE COLORADO CONSUMER PROTECTION ACT**

The SAC alleges that Goldman Sachs violated the CCPA by instructing Litton, its subsidiary, to both delay and deny home loan modifications "en masse" so as to regain advances made to Litton. Specifically, the SAC states that Goldman Sachs "direct[ed] and demand[ed]" that Litton (1) make false representations as to Litton's compliance with HAMP required loss mitigation guidelines in connection with Plaintiffs' loan; and (2) make false representations to consumers, including Plaintiffs, that it would consider (and actually considered) consumers' applications for home loan modifications, despite the fact that Litton knew in reality the homeowners would not be considered in good faith. (Doc. # 46 at 14-16.)

In the Litton Litigation, this Court granted summary judgment in favor of Litton on Plaintiffs' CCPA claim, holding that Plaintiffs failed to establish that Litton engaged in an unfair or deceptive trade practice as required by C.R.S. § 6-1-105(1)(e). *Dawson*, 2014 WL 4821373 at *6-7; *see also Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003) (noting that to establish a claim under the CCPA, a must allege defendant made a false representation that "either induce[d] a party to act, refrain from acting, or have the capacity or tendency to attract consumers.") Specifically, the Court noted that there was no evidence "demonstrating that Defendant Litton failed to comply with the loss mitigation guidelines, that it made a knowing false representation about its compliance, or that it made any misrepresentations with regard to Plaintiffs' alleged attempts to cure." *Dawson*, 2014 WL 4821373 at *7. The SAC seeks to hold Goldman Sachs derivatively liable for Litton's actions, but this Court has

already held that Plaintiffs failed to state a claim under the CCPA against Litton. Thus, there is no basis for holding Goldman Sachs liable on a derivative basis and this claim is also dismissed.

**C.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

In Colorado, "[t]he elements of outrageous conduct are: (1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002). The first element, extreme and outrageous conduct, is satisfied only if the conduct goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970) (citing Restatement (Second) of Torts § 46 (1965)); *see also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo.1999) ("[T]he level of outrageousness required [to create liability for this tort] is extremely high: . . . the conduct [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.") It is for the court to determine, in the first instance, whether reasonable people could differ on the outrageousness issue. *Blackwell v. Del Bosco*, 536 P.2d 838, 841 (Colo. App. 1975), *aff'd*, 191 Colo. 344, 558 P.2d 563 (Colo. 1976).

In the Litton Litigation, this Court granted Litton's Motion to Dismiss regarding Plaintiffs' IIED claims, holding that Plaintiffs failed to plead that Litton engaged in "extreme or outrageous" conduct as a matter of law. *Dawson*, 2013 WL 1283848 at *9-10. Although the Court acknowledged that Litton's conduct, as alleged, was

11

reprehensible, it also concluded that this conduct did not "go beyond all possible bounds of decency" or rise to the level of being "atrocious . . . and utterly intolerable in a civilized community," as required for an IIED claim. *Id.* (quoting *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988)). In particular, the allegations did not contain facts indicating "that the correspondence between Plaintiffs and [Litton] strayed from being professional and formulaic." *Id.* at *10.

In the SAC, Plaintiffs allege that Goldman Sachs' conduct "was outrageous, atrocious and beyond all bounds of human decency." (Doc. # 46 at 17.) The conduct it alleges against Goldman Sachs is, for all intents and purposes, the same as that alleged against Litton – the main difference being that the SAC seeks to hold Goldman Sachs liable on a derivative basis.[2] However, this Court has already held that Plaintiffs failed to state an IIED claim against Litton in the Litton Litigation. Because there is no basis to hold Goldman Sachs liable on derivative basis, Plaintiffs' IIED claim is also dismissed.

### D. PLAINTIFFS' RICO AND COLORADO ORGANIZED CRIME CONTROL ACT CLAIMS

RICO and COCCA are similar statutes and are generally construed along similar lines. *Tara Woods Ltd. Partnership v. Fannie Mae*, 731 F. Supp. 2d 1103, 1125

---

[2] *Compare Dawson*, 2013 WL 1283848 at *10 (noting that in the Litton Litigation, "Plaintiffs allege[d] that Defendants offered the HAMP plan knowing it would not be permanent, interfered with Plaintiffs attempts to cure loans, and aggressively pursued foreclosure, while knowing 'how emotional people are about losing their family homes'") *with* (Doc. # 46 at 11-12) (alleging that Plaintiffs suffered emotional distress from (1) "their frustrations in dealing with a rigged system that sent them on an emotional 'roller coaster,' continually telling them in writing that there was hope to save their home"; (2) "the loss [of their home] itself and because of their knowledge that Litton was somehow manipulating them and somehow improperly taking their home for some corrupt reason," and (3) "a feeling a sense of hopelessness to achieve justice in the foreclosure mill Defendant constructed in Colorado.")

(D. Colo. 2010). In broad terms, a party asserting a garden-variety RICO or COCCA claim must plead four elements: (i) conduct; (ii) of an enterprise; (iii) through a pattern of two or more instances; (iv) of racketeering activity. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).

The SAC has failed to allege adequate facts to plausibly suggest that representatives of Goldman Sachs and Litton were part of an "enterprise" with an existence and a decision-making structure separate from the corporate entity for which they worked. To plead the existence of an enterprise under 18 U.S.C. § 1962(c), the complaint must show "an ongoing organization" (1) with a "decision-making framework or mechanism for controlling the group;" (2) with associates that "function as a continuing unit;" and (3) which is "separate and apart from the pattern of racketeering activity." *United States v. Sanders*, 928 F.2d 940, 943-44 (10th Cir. 1991); *see also Ferris v. Bakery, Confectionery & Tobacco Union, Local 26*, 867 P.2d 38, 46 (Colo. App. 1993) (holding that because C.R.S. § 18-17-104(3) was modeled on 18 U.S.C. § 1962(c), a district "enterprise" is also prerequisite for COCCA claims).[3] Accordingly, for Goldman Sachs to be liable under RICO or COCCA, its liability must be based on its association with an enterprise possessing "an existence and purpose distinct" from

---

[3] The Court notes that in *People v. Pollard*, 3 P.3d 473, 476-77 (Colo. App. 2000), a division of the Colorado Court of Appeals held that when a separate entity is formed by the act of incorporation, "the corporation constitutes an enterprise within the meaning of [C.R.S.] § 18-17-104(3), separate from the person engaged in the pattern of racketeering activity." In doing so, it cited cases from the Fourth and Ninth circuits. *Id.* However, as the Tenth Circuit's opinion in *Board of County Commissioners* makes clear, the Tenth Circuit's view (as well as the "predominant view") is that the plaintiff must allege that the defendant was distinct from the alleged "enterprise." 965 F.2d at 885. Accordingly, *Ferris* constitutes better authority than *Pollard*: Colorado courts generally look to federal RICO law in construing COCCA, and *Ferris* specifically cites the law in the Tenth Circuit. In any case, Plaintiffs' COCCA claims fail for other reasons, as explained below.

itself, and "employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself." *Bd. of Cnty. Comm'rs of San Juan County v. Liberty Group*, 965 F.2d 879, 885, 886 n.4 (10th Cir. 1992); *see also Ferris*, 867 P.2d at 46 (Colo. App. 1993) (citing *Board of County Commissioners,* 965 F.2d at 886 n. 4, in concluding that, under COCCA, defendant must have a distinct existence from an "enterprise"). The Tenth Circuit has specifically held that merely alleging that a subsidiary conducted the affairs of parent corporation is insufficient to state a viable RICO claim under § 1962(c). *Brannon v. Boatmen's First Nat'l Bank of Ok.,* 153 F.3d 1144, 1147-48 (10th Cir. 1998). Instead, a plaintiff "must, at the very least, allege the parent somehow made it easier to commit or conceal the fraud of which the plaintiff complains." *Id.* (internal quotation marks omitted); *see also Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A*., 30 F.3d 339, 344 (2d Cir. 1994) (explaining that because corporations can only function through its employees and agents, simply alleging that employees performed predicate acts in the course of their employment on behalf of the corporation cannot fulfill the distinctiveness requirement under RICO).

  The SAC alleges that an association among the management of Goldman Sachs and Litton, with certain employees of the latter party, constituted the "enterprise" in the instant case. *See* (Doc. # 46 at 17-18) (stating, in a description of the "enterprise," that "[i]n 2007, Defendant acquired control of the equity interests in Litton and began to direct its operations. It regularly sent representatives to Litton's executives, as previously stated, to meetings that gave business directives to Litton.") The SAC does

14

not specify **which** Goldman Sachs representatives or executives were "directing" (also unspecified) Litton employees as part of this enterprise, nor **how** this "direction" made it easier to commit the alleged fraud.  It also fails to provide any factual details to support the alleged existence of an "enterprise" with a decision-making framework or mechanism beyond that of the inherently hierarchical relationship between Goldman Sachs as parent corporation and Litton as its subsidiary.  "Such conclusory allegations employ a 'moving target' approach to describing an enterprise, by naming a string of participants, known and unknown, and alleging that they acted as an association in fact. Considering the centrality of the enterprise to a RICO claim, 'a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element.'" *Dirt Hogs Inc. v. Natural Gas Pipeline Co. of Am.*, 210 F.3d 389, 389 at *3 (10th Cir. 2000) (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995)). Because the "enterprise" identified by Plaintiff appears to be nothing more than Goldman and its subsidiary Litton, the SAC fails to describe an enterprise distinct from the defendant corporation, and the RICO and COCCA claims are accordingly dismissed.

In the alternative, Plaintiffs' RICO and COCCA claims also fail meet the heightened pleading requirements of the Federal and Colorado Rules of Civil Procedure.  Here, Defendant challenges the specificity of the SAC's allegations regarding Goldman Sachs' predicate acts of "racketeering activity."  In contrast to the liberal pleading requirements of Rule 8, wherein the plaintiff must only plead "a short and plain statement of the claim showing that the pleader is entitled to relief," when the

alleged predicate acts underlying a COCCA or RICO claim involve fraud, such acts must be pled with particularity pursuant to Fed. R. Civ. P. 9(b) and C.R.C.P. 9(b).[4] *See, e.g., Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (noting that particularity is required under Fed. R. Civ. P. 9(b), in part because "the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts"); *New Crawford Valley, Ltd.*, 877 P.2d at 1371 (noting that particularity is required when COCCA claims involve fraud, per C.R.C.P. 9(b)). Although courts must be sensitive to the risk that application of the requirement of particularity, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud, "a complaint alleging fraud should be filed only after a specific wrong is reasonably believed to have occurred: it should serve to seek redress for a wrong, not to find one." *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972).

In *Jensen v. America's Wholesale Lender*, 425 F. App'x 761 (10th Cir. 2011), the Tenth Circuit held that the plaintiffs failed to meet the heightened pleading standard required by Rule 9(b), because their RICO claims

> simply speculate[d] that defendants and/or their agents collectively engaged in various instances of wrongdoing that eventually culminated in the foreclosure of their home. While this might suggest "that **some** plaintiff could prove **some** set of facts in support of the pleaded claims, . . . the complaint must give the court reason to believe that **this** plaintiff has a reasonable likelihood of mustering factual support for **these** claims."

---

[4] Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Colorado rule is identical.

*Id.*, 425 F. App'x at 763 (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)); *see also Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (affirming district court dismissal of RICO claims sounding in fraud when the plaintiff merely alleged that the misrepresentations were made over a range of years, "specifie[d] nothing about the content of the alleged misrepresentations, instead reciting a general statement that the Defendants 'fail[ed] to disclose the existence, location, ownership, condition and true value of [KII] assets and property.' . . . [and] failed to identify any specific Defendant who made these alleged fraudulent misrepresentations or omissions.").

Like the complaints in *Jensen* and *Koch Industries*, the SAC contains broad and conclusory allegations of a "pattern of racketeering activity" that do not meet the heightened pleading standards dictate by Fed. R. Civ. P. 9(b) and its state-law counterpart. The SAC alleges that Defendant caused Litton to deposit "thousands" of letters in the U.S. Mails falsely notifying consumers, including Plaintiffs, that (1) they might qualify for a home loan modification, (2) their modification packets/applications were not complete, and (3) their applications were denied for a substantive reason. (Doc. # 46 at 19-21.) It also alleges that Goldman "caused Litton representatives, in violation of 18 USC § 1343," to provide this same purportedly false information to consumers over telephone lines. (*Id.*) The SAC alleges that Goldman Sachs directed Litton to conduct these activities "so as to give the false appearance of compliance" with the HAMP program and so that it could recoup its advances to Litton more quickly. (*Id.*)

17

Where mail fraud is alleged as a predicate act, a complaint must provide (1) the time, place and contents of the false representation; (2) the identity of the party making the false statements and the consequences thereof; and (3) the purpose of the mailing within the defendant's fraudulent scheme.  *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006).  In the instant case, the SAC does allege the third element – *i.e.*, it identifies the purpose of the allegedly fraudulent mailing – because it alleges that that Defendant "directed" Litton to send false letters and make false phone calls to "get its money back" from Litton and "perpetuate its plan and avoid detection by federal and state regulators." (Doc # 46 at 18-19.)  Nevertheless, the SAC does not meet the remaining requirements: despite the fact that Plaintiffs allege that they personally received letters and phone calls from Litton, had the benefit of discovery, and received notice that Defendant would make this precise argument and that the Court would require specificity,[5] the SAC does not contain specific details as to the identity of the party making the false communications. Nor does it specify the times, places, and content of the false representation beyond very general statements about the subject of the calls or letters – not only with regard to the "thousands" of customers it alleges were defrauded, but also with regard to the representations made to Plaintiffs regarding their **own** loan.  These

---

[5] *See* (Doc. # 32 at 14) (in which Defendant argues, as to Plaintiffs' COCCA-racketeering claims, that the Plaintiffs' "defective, conclusory allegations do not, for instance, specify the 'time, place, and content of the alleged false representation,' nor 'describe with particularity any allegedly fraudulent transaction, and how the particular mailing or transactions furthered the fraudulent scheme'"); *Dawson v. Litton Loan Servicing, LP*, No. 12-CV-01334-CMA-KMT, 2014 WL 4821373 (D. Colo. Sept. 29, 2014) (granting summary judgment regarding Plaintiffs' CCPA claim in part because "[a]lthough Plaintiffs allege that, when Plaintiffs contacted Defendant Litton in attempts to make payments, they were given incorrect and extremely high numbers to pay to prevent foreclosure, they do not provide evidence of the alleged phone calls, the amounts quoted to cure default, or any other specifics about these alleged communications.")

vague and conclusory allegations of fraudulent communications made by unspecified individuals at Litton (at the direction of other unspecified individuals at Goldman Sachs) simply cannot satisfy the specificity requirements of Fed. R. Civ. P. 9(b).

Plaintiffs' Response states that "Plaintiffs will acknowledge that they could plead with more specificity by contacting or deposing eyewitness Chris Wyatt for more details and would ask that, should the Court find the pleading of the racketeering counts deficient in any respects, that Plaintiffs be granted leave to amend. Nonetheless, they assert that the current pleading is sufficient under Rule 12(b)(6)." (Doc. # 57 at 13-14). However, Plaintiffs have already deposed Wyatt in the Litton Litigation (*see* Doc. # 79-1 in case no. 12-CV-01334), and they Plaintiffs do not indicate that they possess additional information they did not have in crafting the Second Amended Complaint. Additionally, "our pleading standard 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Jensen*, 425 F. App'x at 763-64 (quoting *Iqbal*, 556 U.S. at 678-79).[6] Accordingly, the Court will deny what it characterizes as an informal request for leave to amend, and, as stated below, the SAC will be dismissed with prejudice, as an amendment to the SAC would be futile. *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997) (holding that a dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile).

---

[6] Furthermore, Plaintiffs' request for leave to amend the SAC to attempt to assert valid claims is procedurally improper. *See* D. C. COLO. L. Civ. R. 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate document.")

19

## IV. CONCLUSION

Having carefully reviewed the SAC and the arguments advanced by the parties, the Court concludes that Plaintiffs fail to state a claim upon which relief may be granted, and the Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff.  Pursuant to D.C. Colo. L Civ. R. 54.1, Defendant may thereafter have its costs by filing a bill of costs within 14 days of the date of that order.  Accordingly, it is

ORDERED that Defendant's Motion to Dismiss (Doc. # 52) is GRANTED.  It is

FURTHER ORDERED that Plaintiffs' claims are DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that this case is DISMISSED IN ITS ENTIRETY.

DATED:  October 27, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge